<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BLACK SHIP, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HEARTLAND PAYMENT SYSTEMS, LLC,<br><br>Defendant. | Civil Action No. 21-13855 (ZNQ) (DEA)<br><br>**MEMORANDUM OPINION** |

<u>**QURAISHI, District Judge**</u>

This matter comes before the Court upon Defendant Heartland Payment Systems, LLC's ("Heartland" or "Defendant") Motion to Dismiss Plaintiffs 33 Taps, LLC ("33 Taps") and Hinoki & the Bird, LLC's ("Hinoki") (collectively "Plaintiffs") Amended Complaint (ECF No. 16) or, in the alternative, to Compel Arbitration (ECF No. 24). Plaintiffs opposed (ECF No. 34), and Defendant replied (ECF No. 37). After careful consideration of the parties' submissions, the Court decides the Defendant's motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, Defendant's Motion to Dismiss is denied.

**I.  <u>BACKGROUND</u>**

**A.  Parties' Domicile and Contacts**

Plaintiffs are both California LLCs that, between approximately 2017 and 2021, processed their credit card and debit card transactions through Defendant. (*See* Am. Compl. ¶¶ 18-20, 26-28, 159, ECF No. 16.) Defendant is a "Delaware-formed limited liability company [("LLC")] with its principal place of business" in Atlanta, Georgia. (*Id.* ¶ 28.) Defendant's "sole member is Global

Payments Inc. [("Global")], a Georgia corporation with its principal place of business" also in Atlanta, Georgia. (*Id.*) Neither Defendant nor Global is currently domiciled in New Jersey or presently maintains continuous and systematic contacts in New Jersey. (*See id.* ¶¶ 28-29, 32.)

Plaintiffs allege, however, that Defendant is the successor-in-interest to Heartland, Inc. ("Former Heartland") (*See id.* ¶¶ 28, 29, 32.) Prior to Defendant's April 2016 merger with Global, Plaintiffs allege, Former Heartland maintained consistent and systematic contacts within its then principal place of business, New Jersey. (*Id.*) Specifically, Plaintiffs allege that Plaintiffs entered into a Merchant Processing Agreement (the "First Agreement") with Former Heartland while it was domiciled in New Jersey. (*See id.* ¶ 32.) Plaintiffs do not allege that Former Heartland maintained any other specific contacts within New Jersey other than being domiciled in the state and entering into the First Agreement while domiciled in the state. (*See generally id.*)

B.      **The First Agreement**

The First Agreement contains several provisions relevant to the instant matter. The first is a forum-selection clause which provides that "[a]ny suit, action or proceeding . . . arising out of or relating to [the First] Agreement shall be brought only in the Superior Court of the State of New Jersey in the County of Mercer, New Jersey, or the United States District Court for the [D]istrict

of New Jersey." (Ex. 8 to Lombardo Decl. ¶ 15.13, ECF No. 26-8.)[1] The second relevant provision governs changes made to the First Agreement (the "Changes Provision") and reads as follows:

> Changes: [Heartland] may change the terms of or add new terms to this Agreement at any time in accordance with applicable law. Any such changes or new terms shall be effective when notice thereof is given by [Heartland] either through written communication or on its Merchant website located at: [a specified link].

(*Id.* ¶ 15.15.) The First Agreement separately stipulates that the "applicable law" governing the agreement is New Jersey law. (*Id.* ¶ 15.12.)

The final relevant provision, which purports to govern notices and other communications sent under the First Agreement (the "Notice Provision") reads as follows:

> All notices and other communication required or permitted under th[e First] Agreement shall be deemed delivered when mailed first-class mail, postage prepaid, addressed to the Merchant at the address stated in the Application and to [Heartland] at the address set forth

---

[1] When a defendant raises a jurisdictional defense, the plaintiff must offer "affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citation omitted). Plaintiffs attached no evidence to their Amended Complaint or to their Opposition Brief to rebut Defendant's jurisdictional defense. (*See generally* Am. Compl.; Pls.' Opp'n Br., ECF No. 34; Pls.' Aff., ECF No. 35.) Instead, in arguing personal jurisdiction is proper in this Court, Plaintiffs cite Defendant's contract-based exhibits attached to Defendant's Motion to Dismiss to support their own arguments. (*See, e.g.*, Pls.' Opp'n Br. 4.) Importantly, this case turns on whether the First Agreement or a second Merchant Processing Agreement is binding upon the parties, and Plaintiffs' Amended Complaint relies on both documents where Plaintiffs allege the First Agreement is effective and the latter agreement is not. *See, e.g.*, Am. Compl. ¶ 159 (alleging that a latter agreement is not binding because Plaintiffs did not mutually assent to the latter agreement after receiving notices from Defendant that Plaintiffs allege were insufficient). As Plaintiffs' Amended Complaint relies on the First Agreement, the latter agreements, and purportedly ineffectively sent notices, and because Plaintiffs do not dispute the authenticity of any document offered by Defendant, it is appropriate for this Court to consider Defendant's exhibits relied on by Plaintiffs at this stage. (*See generally* Am. Compl.; *Est. of Marrash v. Securian Life Ins. Co.*, Civ. No. 18-17630, 2019 WL 6338455, at *1 (D.N.J. Nov. 27, 2019) ("The Third Circuit has held . . . that 'a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" (citation omitted); *Isaacs v. Az. Bd. of Regents*, 608 F. App'x 70, 74 (3d Cir. 2015) (finding a defendant can submit opposing affidavits to contradict a plaintiff's jurisdictional allegations).

> below, or at such other address as the receiving party may have provided by written notice to the other[.]

(*Id.* ¶ 14.1.) The Notice Provision then lists a mailing address for Heartland in Indiana, and several sponsor banks. (*Id.*)

33 Taps signed the First Agreement on September 26, 2016, and Hinoki signed the First Agreement on January 5, 2017. (Ex. 6 to Lombardo Decl. 4, ECF No. 26-6; Ex. 7 to Lombardo Decl. 4, ECF No. 26-7.)

      **C.**    **The Second Agreement**

In May 2017, Defendant attempted to make significant revisions to the First Agreement (creating the "Second Agreement"). (Am. Compl. ¶ 159, Ex. 9 to Lombardo Decl., ECF No. 26-9.) One such revision was to the "Choice of Forum" clause, which was changed to require that "[a]ny litigated action (as opposed to an arbitration) . . . shall be brought in either the courts of the State of Georgia sitting in Fulton County or the United States District Court for the Northern District of Georgia." (Ex. 9 to Lombardo Decl. ¶ 17.2.)

By the end of April 2017, in accordance with the Changes Provision, Heartland posted the Second Agreement to its website, https://infocentral.heartlandpaymentssystems.com. (Ex. 8 to Lombardo Decl. ¶ 15.15; Lombardo Decl. ¶ 20, ECF No. 26.) Additionally, on April 30, 2017 and June 30, 2017, Defendant provided 33 Taps and Hinoki written notifications of the Second Agreement. (Ex. 10 to Lombardo Decl. 2, ECF No. 26-10; Ex. 11 to Lombardo Decl. 2, ECF No. 26-11; Ex. 13 to Lombardo Decl. 2, ECF No. 26-13; Ex. 14 to Lombardo Decl. 2, ECF No. 26-14.) The June 30, 2017, notifications read:

> **Important Revisions to the Merchant Processing Agreement**
> As previously indicated, effective June 1, 2017, the Terms of the Merchant Processing Agreement [(the First Agreement)] have been updated and revised. Please access your Heartland InfoCentral user account at https://infocentral.heartlandpaymentsystems.com and carefully review the Terms, **including the changes outlined in**

4

> **SECTION 17 that relate to arbitration and class actions.** If you don't currently have an InfoCentral account, please contact the Heartland Service Center.

(Ex. 11 to Lombardo Decl. 2; Ex. 14 to Lombardo Decl. 2) (emphases in original).) This message was under the heading "***IMPORTANT MESSAGES***" on page two of the billing statements sent to Plaintiffs. (*Id.* (emphasis in original).) In the June notification, no other information was contained on page two other than the message regarding the revisions to the First Agreement. (*See, e.g.*, Ex. 11 to Lombardo Decl. 2 (showing the above June notification); Ex. 10 to Lombardo Decl. 2 (showing that the April notification communicated a similar message but accompanied three other messages labeled "important"). None of the written statements were sent by first-class mail. (*See* Am. Compl. ¶¶ 6 n.3, 159.)

Finally, the Second Agreement provided that it "shall become effective upon acceptance of the first Merchant deposit by [Heartland]" after June 1, 2017. (Ex. 9 to Lombardo Decl. ¶ 13.1; *see also* Ex. 10 to Lombardo Decl. 2.) Plaintiffs continued to use Heartland's services until at least 2021. (*See* Am. Compl. ¶ 19.)

### D. Defendant's Motion to Dismiss

Defendant seeks to dismiss Plaintiffs' Amended Complaint on two grounds: (1) lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2),[2] and (2) failure to state a claim upon which relief can be granted under Rule 12(b)(6). (Def.'s Moving Br. 1-3, ECF No. 25.) In the alternative, Defendant asks the Court to compel arbitration. (*Id.* at 2-3.) All of Defendant's arguments, either seeking dismissal or compulsion of arbitration, depend on this Court finding Defendant successfully modified the First Agreement. (*See generally id.*)

---

[2] All references to "Rule" hereinafter refer to the Federal Rules of Civil Procedure.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(2) Standard

Under Rule 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. "[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe*, 566 F.3d at 330 (second alteration in original) (internal quotation marks and citations omitted). "If the district court does not hold an evidentiary hearing, 'the plaintiff[s] need only establish a prima facie case of personal jurisdiction.'" *Id.* (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)).

In a diversity action, a New Jersey federal court "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citation omitted). New Jersey's long-arm statute "provides for jurisdiction up to the limits of the protection afforded to nonresidents by the Due Process Clause of the Fourteenth Amendment." *Telcordia Tech, Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992). A court has jurisdiction, therefore, if it is determined that the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted).

Federal courts are authorized to exercise two types of personal jurisdiction: general or specific. *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General jurisdiction applies when an individual or corporation is domiciled in the forum state. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("'[A]n individual's domicile, or home, constitutes the paradigmatic 'forum for the exercise of general jurisdiction.'") (quoting

6

*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." *Daimler*, 571 U.S. at 137.

Specific jurisdiction allows a Court to exercise jurisdiction over a non-resident defendant when: (1) the defendant purposefully avails itself of the privilege of conducting its activities within the forum; (2) the litigation arises out of or relates to at least one of those activities; and if the prior two requirements are met, a court may consider whether (3) the exercise of jurisdiction comports with fair play and substantial justice. *Sandy Lane Hotel Co.*, 496 F.3d at 317 (citation omitted). Defendants need not be physically located in the forum state while committing the alleged acts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780 (1984). A single act may satisfy the minimum contacts test if it creates a substantial connection with the forum. *Burger King*, 471 U.S. at 476 n.18.

### B. Rule 12(b)(6) Motion to Dismiss Standard

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).

7

The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. **DISCUSSION**

Defendant raises three issues in its motion to dismiss, that: (1) this Court lacks personal jurisdiction over it; (2) the operative contract between the parties requires this Court to compel arbitration; and (3) Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted. (*See generally* Def.'s Moving Br.) Personal jurisdiction is a threshold issue, because without it, this Court's judgments are not binding on Defendant. *Haller v. Usman*, Civ. No. 22-773, 2022 WL 17131854, at *2 (D.N.J. Nov. 18, 2022) (stating that the "exercise [of] personal jurisdiction over [a] defendant" is a "threshold issue" because without personal jurisdiction over a defendant a court "cannot act"). As such, the Court first considers whether it can exercise personal jurisdiction over Defendant.

### A. **Motion to Dismiss for Lack of Personal Jurisdiction**

In their Amended Complaint and briefing, Plaintiffs appear to advance two theories of personal jurisdiction over Defendant. (Am. Compl. ¶¶ 28, 32; *see* Pl.'s Opp'n Br. 20-21.) First, Plaintiffs allege that the New Jersey forum-selection clause in the First Agreement confers personal jurisdiction over Defendant. (*Id.* ¶ 32; *see also* Pls.' Opp'n Br. 18 (arguing "Heartland is

8

bound by the [First] Agreement's New Jersey Forum Selection Clause").) Second, Plaintiffs appear to allege that Former Heartland's domicile and past contacts in New Jersey confer personal jurisdiction over Defendant. (*See* Am. Compl. ¶ 32; *see also* Pls.' Opp'n Br. 20-21.)

        *1.     Personal Jurisdiction Through the First Agreement's Forum-Selection Clause*

Enforceable forum-selection clauses can confer personal jurisdiction upon both parties to a contract in the forum identified in the clause. *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 469 (D.N.J. 1998) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10-11 (1972)). While Plaintiffs in their Amended Complaint maintain that the First Agreement's forum-selection clause remains binding and enforceable upon the parties, and thus establishes personal jurisdiction in New Jersey, Defendant argues that the First Agreement's forum-selection clause is no longer enforceable as it "is no longer part of the operative contracts (and was revised before [Plaintiffs'] putative class period even began)." (Def.'s Moving Br. 16; *see* Am. Compl. ¶ 32; *see also* Lombardo Decl. ¶ 20; Ex. 6 to Lombardo Decl. 4; Ex. 7 to Lombardo Decl. 4; Ex. 8 to Lombardo Decl. ¶ 15.13; Ex. 9 to Lombardo Decl. ¶ 17.2; Ex. 10 to Lombardo Decl. 2; Ex. 11 to Lombardo Decl. 2; Ex. 12 to Lombardo Decl. 2; Ex. 13 to Lombardo Decl. 2; Ex. 14 to Lombardo Decl. 2.) Specifically, Defendant maintains that the First Agreement was revised in 2017, in accordance with the Changes Provision, to make Georgia the appropriate forum to resolve disputes. (Def.'s Moving Br. 16-17; *see also* Ex. 9 to Lombardo Decl. ¶ 13.1; Ex. 10 to Lombardo Decl. 2.)

Plaintiffs respond that "Heartland's notice [of the Second Agreement] did not reasonably apprise Plaintiffs of the purported change to the [First] Agreement's 'Jurisdiction & Venue' provision, nor did Plaintiffs manifest assent to change the venue." (Pls.' Opp'n Br. 8-17, 21.) As such, the First Agreement's forum-selection clause remains enforceable. (*See id.*)

9

To determine if the First Agreement's forum-selection clause confers personal jurisdiction over Defendant, therefore, this Court must determine whether Defendant successfully revised the First Agreement's forum-selection clause. If it did, then this Court cannot exercise personal jurisdiction through the First Agreement's forum-selection clause.

Before conducting this analysis, the Court must determine what law governs this Court's analysis. The Changes Provision in the First Agreement stated:

> Changes: [Heartland] may change the terms of or add new terms to this Agreement at any time in accordance with applicable law. Any such changes or new terms shall be effective when notice thereof is given by [Heartland] either through written communication or on its Merchant website located at [a specified link].

(Ex. 8 to Lombardo Decl. ¶ 15.15.) In agreeing to the Changes Provision, the parties to the First Agreement agreed that any changes made to the First Agreement must comply with "applicable law." (*Id.*) The parties agreed that New Jersey law would be the applicable law governing the First Agreement. (*Id.* ¶ 15.12.) Therefore, any modifications to the First Agreement had to comport with contract principles under New Jersey law. Accordingly, this Court employs New Jersey law in evaluating whether Defendant successfully modified the First Agreement's forum-selection clause.

### a) Contract Modifications Under New Jersey Law

"A basic tenet of [New Jersey] law is the doctrine of freedom of contract." *Marcinczyk v. State of N.J. Police Training Comm'n*, 5 A.3d 785, 788 (N.J. 2010) (citing *Fivey v. Pa. R.R.*, 52 A. 472 (N.J. 1902)); *see also Whalen v. Schoor, DePalma & Canger Grp.*, 702 A.2d 1311, 1313 (N.J. Super. Ct. App. Div. 1997) ("Within the framework of modern commercial life, 'the basic tenant of freedom . . . of contract is a factor of importance.'" (quoting *Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69, 84 (N.J. 1960)). Under the doctrine, "courts do not lightly interfere with

10

th[e] freedom of contract." *Rodriguez v. Raymours Furniture Co.*, 138 A.3d 528, 538 (N.J. 2016) (internal quotation marks and citations omitted). Accordingly, "where the terms of a contract are clear and unambiguous, there is no room for interpretation or construction and the courts must enforce those terms as written." *Namerow v. PediatriCare Assoc., LLC*, 218 A.3d 839, 843 (N.J. Super. Ct. App. Div. 2018); *see also Matter of County of Atlantic*, 166 A.3d 1112, 1122 (N.J. 2017) ("[I]f the contract into which the parties have entered is clear, then it must be enforced as written.") (internal quotation marks and citation omitted); *Kampf v. Franklin Life Ins. Co.*, 161 A.2d 717 (N.J. 1960) ("Courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made.")).

This freedom is not absolute, however. *Whalen*, 702 A.2d at 1313-14. New Jersey courts "historically [have] refused to enforce contracts that violate public policy and those that are the product of economic oppression." *Id.* Examples of contracts that violate public policy might include "contracts that violate[] statutes, promote[] crime, interfere[] with the administration of justice, encourage[] divorce, destroy[] privacy rights, or restrain[] trade." *Id.* at 1314 (collecting cases). Examples of contracts made under economic oppression or duress include contracts assented to under threat or contracts of adhesion. *Id.* (citations omitted).

Importantly, here, by their own admission, Plaintiffs willfully signed and mutually assented to the First Agreement. (Pls.' Opp'n Br. 8 ("Here, there was mutual assent to the [First Agreement] . . ."). Plaintiffs do not allege the First Agreement violated public policy, was made under duress, or constitutes a contract of adhesion. (*See generally* Am. Compl.; Pls.' Opp'n Br.) Nevertheless, Plaintiffs assert that they did not assent to Defendant unilaterally changing the terms of the [First Agreement], and thus any purported modification was ineffective. (Pls.' Opp'n Br. 8.)

11

The contract, however, suggests otherwise. Specifically, the Changes Provision in the First Agreement expressly provides that Defendant may unilaterally revise the First Agreement provided that it give notice to Plaintiffs. (Ex. 8 to Lombardo Decl. ¶ 15.15.) As such, Plaintiffs mutually assented to Defendant's future modifications to the forum-selection clause when they agreed to the Changes Provision.

It is unclear if Plaintiffs intend to assert that the Changes Provision was per se unenforceable under New Jersey law because it allowed Defendant to unilaterally modify the First Agreement. (*See* Pls.' Opp'n Br. 11, 37.) Importantly, Plaintiffs do not make any such contention in their Amended Complaint. (*See generally* Am. Compl.) Even if Plaintiffs pled such a contention, Plaintiffs cite no case law to suggest that a freely-contracted-to unilateral modification provision is unenforceable if the modifying party contracts to give notice to the other party. (*See id.* (citing only one California federal district court case and one New Jersey Superior Court case finding that unilateral modification provisions like the Changes Provision are not allowed where *no* notice was required in the contract).)

For these reasons, Plaintiffs failed to show that the Changes Provision is unenforceable under New Jersey law. As such, the mutually-agreed-to Changes Provision authorized Defendant to modify the First Agreement if notice was properly given.

          **b)**        **Proper Notice under the First Agreement**

Plaintiffs' primary allegation against Defendant is that it failed to send proper notice of any modifications to the First Agreement, which breached the First Agreement and rendered the Second Agreement unenforceable. (*See generally* Am. Compl.) The Court finds that an ambiguity exists in the First Agreement as to whether proper notice of the Second Agreement was sent to Plaintiffs. As such, the Court cannot grant Defendant's Motion to Dismiss under Rule 12(b)(2).

As aforementioned, "where the terms of a contract are clear and unambiguous, there is no room for interpretation or construction and the courts must enforce those terms as written." *Namerow*, 218 A.3d at 843. "An ambiguity in a contract exists [, however,] if the terms of the contract are susceptible to at least two reasonable alternative interpretations." *Cooper River Plaza East, LLC v. Briad Grp.*, 820 A.2d 690, 697 (N.J. Super. Ct. App. Div. 2003) (citation omitted). Generally, the terms of an agreement are to be given their plain and ordinary meaning. *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 794 A.2d 141, 152 (N.J. 2002) (citation omitted).

Plaintiffs argue that "Heartland's notice [of the changes] did not reasonably apprise Plaintiffs of the purported change to" the forum-selection clause in accordance with the provisions of the First Agreement. (Pls.' Opp'n Br. 21.) Specifically, Plaintiffs construe the Notice Provision to require Heartland to send "first-class mail notice to Plaintiffs about a change in the [First] Agreement's" forum-selection clause. (*Id.*; *see also* Am. Compl ¶ 6 n.3.) In this way, Plaintiffs implicitly allege an ambiguity exists in the First Agreement because the Notice Provision appears to conflict with the Changes Provision. (*See* Ex. 8 to Lombardo Decl. ¶¶ 14.1, 15.15.) Specifically, the Notice Provision requires that "[a]ll notices and other communication required or permitted under th[e First] Agreement shall be deemed delivered when mailed first-class mail" but the Changes Provision requires that any "changes or new terms shall be effective when notice thereof is given by [Heartland] either through written communication or on its Merchant website[.]" (*Id.*)

At this stage, Plaintiffs need only make out a prima facie case of personal jurisdiction. *Metcalfe*, 566 F.3d at 330. By alleging that an ambiguity exists in the First Agreement as to what notice is required for Defendant to unilaterally modify the first agreement, the Court is obligated to credit Plaintiffs' interpretation of the ambiguity at this stage. *Mercedes-Benz USA, LLC v. ATX Grp., Inc.*, Civ. No. 08-3529, 2009 WL 2255727, at *8 (D.N.J. July 27, 2009) (finding that a

13

reasonable interpretation of a contract by a plaintiff creates an ambiguity "sufficient to overcome [a] defendant's motion to dismiss and to permit [a] case to proceed to discovery.")[3] Plaintiffs established a prima facie case of personal jurisdiction by alleging that: (1) the mutually-assented to First Agreement contains a New Jersey forum-selection clause; (2) Plaintiffs allege the First Agreement requires first-class mail notice to be sent to them for any modifications to be effective; and (3) Plaintiffs allege they never received first-class mail notice of any modifications. (*See* Am. Compl. ¶¶ 6 n.3, 32, 33; Pls.' Opp'n Br. 8.)

As such, at this stage, the Court cannot credit Defendant's assertion that the Second Agreement is binding over the parties, and therefore, that this Court lacks personal jurisdiction over it. To be clear, however, "by accepting a plaintiff's facts as true" when evaluating a motion to dismiss for lack of personal jurisdiction, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute. *Metcalfe*, 566 F.3d at 331 (citation omitted). Here, Plaintiffs' personal jurisdiction allegations are completely contingent upon the Court crediting Plaintiffs' factual assertion, in a light most favorable to them, that the Notice Provision required first-class mail notice and superseded the Changes Provision's requirements. In order for this Court to exercise personal jurisdiction over Defendant moving forward, however, Plaintiffs will have to prove that the ambiguity between the Notice Provision

---

[3] The Court recognizes Defendant's cases citing principles of contract interpretation that favor its interpretation of the contract provisions. (Def.'s Reply Br. 5-6, ECF No. 37; *HSBC Bank, USA Nat'l. Ass'n v. Woodhouse*, No. F-53147-09, 2012 WL 1868217, at *3 (N.J. Super. Ct. App. Div. May 24, 2012) ("[A]n interpretation which gives reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable."); *Gil v. Clara Maass Med. Ctr.*, 162 A.3d 1093, 1098-99 ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general.").) While the Court cannot engage in contract interpretation at this stage, Defendant is not foreclosed from raising these interpretation arguments at a later stage in arguing that personal jurisdiction is not proper in this Court.

and Changes Provision resolves in Plaintiffs' favor after contract interpretation principles are applied.

## 2. Personal Jurisdiction Through Pre-Merger Corporate Domicile

The Court briefly assesses Plaintiffs' other personal jurisdiction argument to evaluate whether it may serve as a basis for personal jurisdiction in this case. Plaintiffs appear to allege that personal jurisdiction over Defendant is appropriate because its corporate predecessor was domiciled within New Jersey and previously sustained contacts within the state. (Am. Compl. ¶¶ 28, 32.) Defendant argues that Former Heartland is "not a party to this dispute" and Plaintiffs never "contracted with—or received payment processing services from—[Former] Heartland." (Def.'s Moving Br. 15.) Rather, Defendant maintains, Plaintiffs did not contract with Heartland until after April 22, 2016, after Former Heartland "ceased to exist as a separate entity." (*Id.*; *see also* Lombardo Decl. ¶¶ 5-7 (stating Heartland was created in connection with Global's acquisition of Former Heartland, and that on April 22, 2016, Former Heartland merged into Data Merger Sub Two, LLC, at which point Former Heartland ceased to exist as a separate entity and surrendered its ability to transact business in New Jersey.)

Personal jurisdiction does not attach to Defendant simply because Former Heartland previously maintained a principal place of business and contacts in New Jersey. First, in alleging personal jurisdiction attaches to Defendant because its corporate predecessor maintained a principal place of business in New Jersey, Plaintiffs in part attempt to establish general jurisdiction over Defendant. *Daimler AG*, 571 U.S. at 137 ("With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction.") Significantly, general jurisdiction may not be established solely on a defendant's corporate predecessors' past activity where a plaintiff has otherwise alleged no "*current* business activity [in] New Jersey." *See Senju Pharm. Co. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 441 (D.N.J. 2015)

15

(emphasis in original). Moreover, alleging only that Defendant's corporate predecessor maintained "consistent and systematic contacts [in] New Jersey" falls well short of supporting an argument that specific jurisdiction exists over Defendant. (Am Compl. ¶ 32.) Plaintiffs do not allege that Defendant maintains any relationships in New Jersey, and Plaintiffs offer no evidence of Former Heartland's past contacts in New Jersey such that this Court could evaluate whether they were substantial enough to warrant an exercise of personal jurisdiction. (*See generally* Am. Compl.; Pls.' Opp'n Br.) As such, without any allegations that Defendant is currently engaged in substantial business activity in New Jersey, let alone the high threshold of business activity required to warrant the exercise of personal jurisdiction over a defendant, Plaintiffs' argument that personal jurisdiction attaches because of Former Heartland's past relationships in New Jersey fails. *Id.*; *see Daimler AG*, 571 U.S. at 137 (outlining the high bar a plaintiff must meet to establish specific jurisdiction).

      Plaintiffs' allegation that Former Heartland's jurisdictional status is "inherited" by Defendant by virtue of its merger with Global also fails. (Am. Compl. ¶ 32.) In making this allegation, Plaintiffs seek to invoke the relatively obscure successor-jurisdiction doctrine. *See Kirkwood v. Brenntag N. Am., Inc.*, Civ. No. 19-14947, 2020 WL 1516974, at *4 (D.N.J. Mar. 30, 2020) (discussing the limited case law in the Third Circuit crediting the successor-jurisdiction doctrine). In general, however, the Third Circuit only recognizes successor jurisdiction where a plaintiff can establish, through affidavits and exhibits, that the predecessor maintained significant, relevant contacts in the forum state that can justly be attached to the successor organization. *See In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 824-25 (3d Cir. 2005) (discussing successor jurisdiction and arguably establishing the use of such doctrine in the Third Circuit, though most of the unreported case is concerned with New York state law and Second

Circuit precedent); *see also Am. Ests. Wines, Inc. v. Kreglinger Wine Ests. Pty Ltd.*, Civ. No. 07-2474, 2008 WL 819993, at *5 (D.N.J. Mar. 25, 2008); *Kirkwood*, 2020 WL 1516974, at *4.

Plaintiffs neither allege with any particularity nor provide any affidavits or exhibits establishing that Former Heartland or Defendant maintained, or maintains, any significant contacts in New Jersey. Instead, Plaintiffs only allege that Former Heartland entered into a contract with Plaintiffs while it was still domiciled in New Jersey. (Am. Compl. ¶ 32.) Regardless of whether such an allegation is true, which Defendant argues it is not, Plaintiffs failed to show that such limited contact with New Jersey is sufficient to establish personal jurisdiction over Defendant. (*See* Lombardo Decl. ¶¶ 5-7 (stating Heartland was created in connection with Global's acquisition of Former Heartland, and that on April 22, 2016 Former Heartland merged into Data Merger Sub Two, LLC, at which point Former Heartland ceased to exist as a separate entity and surrendered its ability to transact business in New Jersey); (Ex. 6 to Lombardo Decl. 4 (showing 33 Taps entered into a contract with Defendant after Former Heartland ceased to exist); Ex. 7 to Lombardo Decl. 4 (showing Hinoki entered into a contract with Defendant after Former Heartland ceased to exist).)

For these reasons, Plaintiffs' arguments pertaining to Former Heartland's contacts with New Jersey imputing personal jurisdiction over Defendant fail. The only basis for this Court's exercise of personal jurisdiction over Defendant, therefore, is the First Agreement's forum-selection clause.

### B.     Motion to Compel Arbitration and Motion to Dismiss Plaintiffs' Claims under Rule 12(b)(6)

Defendant also moves to compel arbitration or dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted. (Def.'s Moving Br. 18-35.) As discussed

below, both Defendant's motion to compel arbitration and Defendant's motion to dismiss Plaintiff's claims for failure to state a claim are denied.

### 1. Motion to Compel Arbitration

Defendant's motion to compel arbitration is ultimately denied for the same reasons Defendant's motion to dismiss for a lack of personal jurisdiction is denied: the Court must credit Plaintiffs' allegations that the First Agreement remains enforceable due to improper notice of the Second Agreement. (*See generally* Am. Compl.) The First Agreement did not contain a binding arbitration provision, and all of Defendant's arguments as to why arbitration should be compelled rely on a theory that the First Agreement was successfully modified, and the Second Agreement, which contains a mandatory arbitration provision, is the operative contract. (Ex. 9 to Lombardo Decl. ¶ 17.1; Def.'s Moving Br. 18-26; *see generally* Ex. 8 to Lombardo Decl.) As the Court must credit Plaintiffs' allegations that the First Agreement remains the binding contract between the parties, the First Agreement contains no mandatory arbitration provision, and the Second Agreement's provisions are not binding upon Plaintiffs, the Court cannot grant Defendant's motion to compel arbitration.

### 2. Motion to Dismiss for Failure to State a Claim

Again, most of Defendant's arguments as to why Plaintiffs' Amended Complaint should be dismissed rely on the Second Agreement being deemed the operative contract. (*See* Def.'s Moving Br. 26-35.) As the Court has already found that, at this stage, the Court must credit Plaintiffs' assertion that the First Agreement remains in effect and improper notice of the Second Agreement renders the Second Agreement inoperative, any argument for dismissal of Plaintiffs'

contract claims contingent upon this Court crediting the Second Agreement's provisions must be rejected.[4]

Defendant raises only one challenge to Plaintiffs' claims that does not require the Second Agreement to be the operative contract. (*Id.* 34-35.) Namely, Defendant contends that Plaintiffs' unjust enrichment claims must be barred because Plaintiffs allege the First Agreement is a valid contract. (*Id.* at 34.) Plaintiffs respond that their unjust enrichment claim is an argument in the alternative, which in New Jersey can be pled alongside a breach of contract claim. (Pls.' Opp'n Br. 39.) The Court agrees with Plaintiff. *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, No. 15-3103, 2016 WL 1718100, at *7 (D.N.J. Apr. 29, 2016) ("[A]t the pleading stage, dismissal of an unjust enrichment claim because it might turn out to be superfluous would be premature."). As such, Defendant's motion to dismiss Plaintiffs' claims for failure to state a claim is denied.

---

[4] This finding applies to all of Defendant's efforts to dismiss Plaintiffs' claims, including its efforts to dismiss Plaintiffs' action because Plaintiffs did not comply with a pre-suit notice requirement in the Second Agreement, and its efforts to strike Plaintiffs' class claims. (*See* Def.'s Moving Br. 26-35.)

### III.    CONCLUSION

In conclusion, Defendant's Motion to Dismiss is denied in its entirety. The Court notes that the gravamen of this case, including whether this Court has personal jurisdiction over Defendant, appears to rest on the outcome of the alleged ambiguity in the First Agreement between the Notice Provision and Changes Provision. The parties are advised to focus on this issue moving forward so that this case may be efficiently resolved.

Date: May 22, 2023

s/Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
