# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| 33 TAPS, LLC and HINOKI & THE BIRD, LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HEARTLAND PAYMENT SYSTEMS, LLC f/k/a and successor-in-interest to Heartland Payment Systems, LLC,<br><br>Defendant. | **Case No.: 3:21-cv-13855-ZNQ-JTQ** |

## PLAINTIFFS' BRIEF DISCUSSING THE IMPACT OF THE THIRD CIRCUIT'S ORDER VACATING THE COURT'S PRIOR RULING ON THE MOTION TO DISMISS

STEPHEN J. FEARON, JR.
PAUL SWEENY
**SQUITIERI & FEARON, LLP**
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
TELEPHONE:  (212) 421-6492
FACSIMILE:  (212) 421-6553
STEPHEN@SFCLASSLAW.COM
PAUL@SFCLASSLAW.COM

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS**

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

BACKGROUND ....................................................................................................3

ARGUMENT ..........................................................................................................5

    I.    The Notice and Change Provisions Are Ambiguous as a Matter of Law ..................................................................................................5

    II.    The Court Should Again Reject Heartland's Interpretation of the First Agreement and Instead Allow Additional Discovery .........................7

CONCLUSION .....................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Baldwin v. Univ. of Pittsburgh Medical Center*,
   636 F.3d 69 (3d Cir. 2011)..................................................................................3, 5

*Barr v. Barr*,
   11 A.3d 875 (N.J. App. Div. 2011)............................................................................6

*Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*,
   49 F. Supp. 2d 750 (D.N.J. 1999) ............................................................................5

*Black Ship, LLC v. Heartland Payment Sys., LLC*,
   No. CV 21-13855, 2023 WL 3585329 (D.N.J. May 22, 2023) ............... 2, 3, 4, 6, 8

*Cooper River Plaza East, LLC v. Briad Grp.*,
   820 A.2d 690 (N.J. Super. Ct. App. Div. 2003)). ....................................................4

*Glaviano v. Allstate Ins. Co.*,
   35 F. App'x 493 (9th Cir. 2002)..............................................................................10

*Haskins v. Deutsche Bank Nat'l Tr. Co.*,
   19 N.E.3d 455 (Mass. App. Ct. 2014) .....................................................................8

*Kennedy v. LVNV Funding LLC*,
   No. CV 1810695 JMVCLW, 2019 WL 1789477 (D.N.J. Apr. 24, 2019) ..............6

*Leisure Sys., Inc. v. Roundup, LLC*,
   No. 1:11–CV–384, 2012 WL 5378302 (S.D. Ohio Oct. 31, 2012),........................8

*M.J. Paquet, Inc. v. N.J. Dep't of Transp.*,
   794 A.2d 141 (N.J. 2002).....................................................................................4, 5

*Mylan Inc. v. SmithKline Beecham Corp.*,
   723 F.3d 413 (3d Cir. 2013),....................................................................................6

*Pennbar v. Ins. Co. of N. Am.*,
   976 F.2d 145 (3d Cir. 1992),....................................................................................9

*Slamon v. Carrizo (Marcellus) LLC*,
  No. 3:16-CV-2187, 2017 WL 3877856 (M.D. Pa. Sept. 5, 2017)...........................9

*Valeo Sistemas Electricos S.A. De C.V. v. CIF Licensing, LLC*,
  No. Civ. 06–627–GMS–LPS, 2008 WL 2736819 (D. Del. 2008) ..........................7

# **INTRODUCTION**

This case arises from Heartland's illegal attempt to impose a series of "junk" credit card processing fees on Plaintiffs and thousands of other small to medium sized businesses without providing first-class mail notice as required by "First Agreement."[1] The First Agreement's Notice Provision required notice by mail of contractual changes—including additional fees; changes to the New Jersey forum selection provision; and adding an arbitration provision—or, alternatively, was ambiguous regarding what constituted proper notice.

Heartland acknowledges it did not mail notice of contractual changes to Plaintiffs as required by the Notice Provision. Instead, Heartland contends that the First Agreement's Changes Provision permitted Heartland to provide notice of contractual changes on its website, including changes to the forum selection provision and the addition of an arbitration provision. After Plaintiffs filed this lawsuit, Heartland moved to dismiss for lack of personal jurisdiction or to compel arbitration, arguing that the parties' Second Agreement included a Georgia forum selection clause and mandatory arbitration provision that precludes the lawsuit.

In May 2023, the Court denied Heartland's motion to dismiss for lack of personal jurisdiction. The Court determined that "an ambiguity exists in the First

---

[1] Plaintiffs maintain the Court's naming conventions in its Memorandum Opinion ("Opinion") denying Heartland's motion to dismiss (ECF No. 47).

Agreement as to whether proper notice of the Second Agreement was sent to Plaintiffs." *Black Ship, LLC v. Heartland Payment Sys., LLC*, No. CV 21-13855 (ZNQ) (DEA), 2023 WL 3585329, at *7 (D.N.J. May 22, 2023). Based on that ambiguity, the Court determined that, because Heartland acknowledged it had not provided notice by mail, the First Agreement controlled at this stage of the case and that Plaintiffs had asserted "a prima facie case of personal jurisdiction" pursuant to the First Agreement's New Jersey Forum selection provision.[2] *See id.* at *8. The Court ordered the parties to engage in discovery limited to resolving the contractual ambiguity as to whether Heartland properly implemented the contractual changes forming the basis of Heartland's motions. *See id.* at *10.

On appeal, Heartland argued that this Court had failed to analyze the First Agreement as a matter of law and that this Court had improperly credited Plaintiffs' interpretation of the contract as a matter of pleading. Perhaps taking language from the Opinion out of context, the Court of Appeals agreed. It found the Court had "'declined to engage in contract interpretation[,] on the understanding that it was 'obligated to credit [the restaurants'] interpretation' that there was an ambiguity in the [First Agreement]." *Black Ship, LLC*, 2024 WL 4210519, at *3 (some modifications in original). Significantly, the Court of Appeals declined Heartland's

---

[2] The Court similarly denied Heartland's motion to compel arbitration and motion to dismiss for similar reasons. *Black Ship, LLC*, 2023 WL 3585329, at *9-10.

2

invitation to determine that the First Agreement is unambiguous. Instead, the Court of Appeals vacated and remanded so that this Court could "determine as a matter of law whether contract terms are clear or ambiguous." *Id.* at *3 (citing *Baldwin v. Univ. of Pittsburgh Medical Center*, 636 F.3d 69, 76 (3d Cir. 2011)). The Court of Appeals noted that this Court "was not under an obligation to credit [Plaintiffs'] interpretation of the Unilateral Amendment Clause and the Notice Clause; rather, it should have performed a legal interpretation." *Id.*

On remand, the Court should perform the required legal interpretation and again determine that the First Agreement's Notice and Changes Provisions are ambiguous as to whether Heartland was required to provide notice by mail of contractual changes. The Court should then deny Heartland's motions so that the parties can proceed with discovery to resolve the ambiguity.

## BACKGROUND

When denying Heartland's motion to dismiss for lack of personal jurisdiction, the Court reviewed the First and Second Agreements' relevant provisions, as well as the parties' respective interpretations, and found "<u>an ambiguity exists in the First Agreement as to whether proper notice of the Second Agreement was sent to Plaintiffs</u>." *Black Ship, LLC*, 2023 WL 3585329, at *7 (emphasis supplied).

3

In doing so, the Court applied New Jersey law[3] and noted the well-established principles that "[g]enerally the terms of an agreement are to be given their plain and ordinary meaning" *Id.* (citing *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 794 A.2d 141, 152 (N.J. 2002) and that "[a]n ambiguity in a contract exists . . . if the terms of the contract are susceptible to at least two reasonable alternative interpretations." *Id.* (citing *Cooper River Plaza East, LLC v. Briad Grp.*, 820 A.2d 690, 697 (N.J. Super. Ct. App. Div. 2003)).

After that analysis, the Court determined that the First Agreement was subject to two reasonable interpretations regarding the required notice and was ambiguous because of a conflict between the Notice and Changes Provisions:

> [T]he Notice Provision requires that "[a]ll notices and other communication required or permitted under th[e First] Agreement shall be deemed delivered when mailed first-class mail" but the Changes Provision requires that any "changes or new terms shall be effective when notice thereof is given by [Heartland] either through written communication or on its Merchant website[.]"

*Black Ship, LLC*, 2023 WL 3585329, at *8.

Therefore, the Court appears to have independently construed the relevant provisions under applicable law, concluding that: (1) the First Agreement is subject to two reasonable interpretations and is ambiguous as to whether notice of

---

[3] The First Agreement has a New Jersey choice of law provision (First Agreement, ¶ ,15.13) and the parties have applied New Jersey law throughout this litigation when analyzing the First Agreement.

4

contractual changes by first-class mail was required, and (2) Plaintiffs demonstrated prima facie personal jurisdiction pursuant to the First Agreement's New Jersey forum selection provision until that ambiguity could be resolved because Heartland admitted it did not provide notice by mail of the Second Agreement. *Id.* at *10.

## ARGUMENT

### I.     The Notice and Change Provisions Are Ambiguous as a Matter of Law

To the extent this Court did not previously find the First Agreement was ambiguous as a matter of law regarding notice, the Court should do so now given the Court of Appeals' instruction to perform a legal analysis. Under New Jersey law, "[a]n ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations" when "given their plain and ordinary meaning." *M.J. Paquet, Inc.*, 794 A.2d at 152. "To determine the existence of ambiguity, the court must 'consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation.'" *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F. Supp. 2d 750, 774 (D.N.J. 1999) (citation omitted). "The objective, extrinsic evidence proffered may include, for example, 'the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning.'" *Baldwin*, 636 F.3d at 76.

Here, as the Court previously found, there is a conflict between the Notice Provision and the Changes Provision and, in turn, an ambiguity under New Jersey law as to whether Heartland was required to provide notice by mail of contractual changes. The Notice Provision, by its plain language, broadly requires that "all notices and communications" be delivered by first-class mail, a dictate which Plaintiffs reasonably interpret as encompassing "notices and other communications" of contractual changes made pursuant to the Changes Provision. The Changes Provision, however, seemingly permits notice of contractual changes on Heartland's website contrary to a plain and ordinary reading of the Notice Provision. Thus, the two provisions conflict and are ambiguous.

At this stage of the case, the Court should determine the First Agreement is ambiguous but should not resolve the ambiguity without considering extrinsic evidence regarding the parties' contractual intent. Under New Jersey law, resolving ambiguity is a fact-intensive inquiry that requires broadly reviewing extrinsic evidence. In *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 419 (3d Cir. 2013), for instance, the Third Circuit reversed summary judgment after the district court had refused to consider extrinsic evidence regarding an ambiguity, noting that under New Jersey law "courts must always 'consider all of the relevant evidence that will assist in determining the intent and meaning of the contract' when making ambiguity determinations." 723 F.3d at 720; *Barr v. Barr*, 11 A.3d 875, 882 (N.J.

6

App. Div. 2011) ("[A] court may look to extrinsic evidence as an aid to interpretation.'").

As previously suggested by the Court (*Black Ship, LLC*, 2024 WL 4210519, at *8), courts refuse to resolve contractual ambiguity against a plaintiff on motions to dismiss and motions to compel arbitration until the parties' contractual intent can be ascertained as a matter of fact. *See Kennedy v. LVNV Funding LLC*, No. CV1810695JMVCLW, 2019 WL 1789477, at *3 (D.N.J. Apr. 24, 2019) ("[T]he Court finds that arbitrability is ambiguous on the face of the Complaint and documents relied upon therein; it is unclear whether an arbitration agreement exists between the parties to this action."); *Mercedes-Benz USA, LLC*, 2009 WL 2255727, at *8; *Valeo Sistemas Electricos S.A. De C.V. v. CIF Licensing, LLC*, Civ. No. 06–627–GMS–LPS, 2008 WL 2736819 (D. Del. 2008) ("On a motion to dismiss, however, the Court cannot adopt STM's position because it is not the only reasonable interpretation of the contract."). Therefore, the Court should reiterate its prior finding that the First Agreement's ambiguity regarding notice is amenable to further discovery to determine whether the First or Second Agreement governs the claims.

## II. The Court Should Again Reject Heartland's Interpretation of the First Agreement and Instead Allow Additional Discovery

Heartland will likely argue, as it did previously, that the First Agreement allowed notice of contractual changes through its website. For instance, Heartland previously argued to the Third Circuit that the Notice Provision creates a

7

presumption that first class mailing is sufficient to provide notice but does not require that notice be provided by mail. However, the Notice Provision is the only provision of the First Agreement addressing notice; it broadly applies to "all notices and other communications required by [the First Agreement]; and "deem[s] those notices "delivered when mailed first-class mail." *See* First Agreement, ¶ 14.1.

Plaintiffs reasonably interpret that authoritative language to mean that Heartland was required to provide all contractual notices by mail. In addition, Mr. Schild (Plaintiffs' managing member) supports that interpretation by asserting that he contracted with Heartland based on its promise that its fees would be honest and transparent and that he received and relied on contractual notices from Heartland by first-class mail prior to the contractual changes at issue in this lawsuit. *See* Schild Decl., ¶ 4-6 (ECF No. 36). As a result, the Court should not assume that the Notice Provision merely provides an assumption of notice without allowing Plaintiffs to gather and provide extrinsic evidence supporting their reasonable interpretation.[4]

---

[4] Heartland will likely cite cases involving decisions on summary judgment motions or distinguishable contractual language and circumstances to support this contention. For instance, in *Leisure Sys., Inc. v. Roundup, LLC*, No. 1:11–cv–384, 2012 WL 5378302, at *6-12 (S.D. Ohio Oct. 31, 2012), a summary judgment decision Heartland previously cited, the issue was whether the plaintiff sent notice of a potential franchise termination to the proper address, not the form of notice required by the franchise agreement. Likewise, in *Holman v. Brady*, No. 33114-8-III, 2016 WL 4921457 (Wash. Ct. App. Sept. 13, 2016), an unpublished summary judgment decision that Heartland also previously cited, the relevant contractual provision stated "[a]ll notices or demands . . . shall be deemed delivered 48 hours after depositing the notice or demand in the United States mail." *Id.* at *7. Given the provision's inclusion of a timing component, the court agreed with the defendant that the provision addressed "the time sensitive notice and demand provisions" included in the relevant lease. *Id.* at 8. The Notice Provision here does not include a timing component and instead indicates that all notices should be provided by first-class mail. *Haskins v. Deutsche Bank Nat'l Tr*. Co., 19 N.E.3d 455, 462 (Mass. App. Ct. 2014), involved a Massachusetts statute addressing foreclosures pursuant to a residential mortgage, not a contract.

Heartland will likely reassert its argument that Plaintiffs' interpretation improperly renders the Changes Provision's website notice language superfluous. *See* Heartland Reply Br. 5 (ECF No. 37).[5] At the outset, a court should not apply rules of contractual interpretation to determine the parties' intent as a matter of law when the parties each offer reasonable interpretations of the contract. *Slamon v. Carrizo (Marcellus) LLC*, No. 3:16-CV-2187, 2017 WL 3877856, at *6 (M.D. Pa. Sept. 5, 2017) ("While it is certainly true that courts sometimes apply rules of statutory construction to aid their interpretations of contract[,] the contract language is not so clear that the parties' intent as embodied in the written instrument can be deciphered as a matter of law on a motion to dismiss.") (modification added).

Heartland's interpretation improperly eliminates the Notice Provision's broad dictate that "[a]ll notices and communications required or permitted" be provided by mail, not just notices and communications required or permitted outside of the Changes Provision as Heartland would have the Court believe. Heartland's interpretation eliminates the Notice Provision and re-writes the contract. As a result,

---

[5] The Court should reject any suggestion by Heartland that the Court previously denied its motion because the Court did not consider principles of contract interpretation. *Black Ship*, LLC, 2023 WL 3585329, at *8, n.3. Given that the Court reviewed the First Agreement and found it was ambiguous, it is highly implausible that the Court only refrained from dismissing the case but for a belief that it was forbidden from applying additional, separate principles of contract interpretation that would have resolved that ambiguity as a matter of law without further discovery. Instead, in the footnote that Heartland will likely cite, Plaintiffs submit that the Court is stating that the principles of contract interpretation cited by Heartland could not resolve the First Agreement's ambiguity as a matter of law.

9

the principle of contractual interpretation that seeks to avoid rendering contract language superfluous cannot provide a basis for dismissal.[6]

Heartland will likely re-argue that Plaintiffs' interpretation disfavors general contract language over specific language. However, at this early stage, it is equally plausibly that Notice Provision, rather than the Changes Provision, is the more specific provision because it expressly and specifically governs how Heartland is to provide "[a]ll notices required or permitted under th[e First Agreement[.]" *See Glaviano v. Allstate Ins. Co.*, 35 F. App'x 493, 496 n.2 (9th Cir. 2002) (rejecting application of the specific-general rule when it was unclear which provision was the specific versus general). Thus, the rule of contractual construction favoring specific language cannot resolve the First Agreement's ambiguity as a matter of law.

## **CONCLUSION**

For the reasons stated above, the Court should again deny Defendant's Motion to Dismiss or, in the Alternative, to Compel Arbitration.[7]

Dated: October 30, 2024    By:   /s/ Stephen J. Fearon, Jr.
                                 STEPHEN J. FEARON, JR.

---

[6] Heartland may cite *Pennbar v. Ins. Co. of N. Am.*, 976 F.2d 145 (3d Cir. 1992), a procedurally and substantively distinguishable appeal of a district court's summary judgment order following a jury trial, to support this point. Third Circuit only applied the contractual canon of interpretation against rendering contractual provisions superfluous after carefully considering extrinsic evidence regarding the relevant contractual language. *Id.* at 152-54. From a substantive standpoint, *Pennbar* is distinguishable and offers no insight into this case because it involved the interpretation of an indemnity period of a business interruption insurance policy. *Id.* at 146.

[7] Plaintiffs do not waive, and they expressly reassert, all arguments previously made in their opposition to Heartland's motion to dismiss.

<div style="margin-left:50%">

PAUL SWEENY
**SQUITIERI & FEARON, LLP**
424 MADISON AVE., 3RD FLOOR
NEW YORK, NEW YORK 10007
TELEPHONE:  (212) 421-6492
FACSIMILE:  (212) 421-6553
STEPHEN@SFCLASSLAW.COM
PAUL@SFCLASSLAW.COM

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS**

</div>

11