**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| 33 TAPS, LLC and HINOKI & THE BIRD, LLC, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>HEARTLAND PAYMENT SYSTEMS, LLC,<br><br>        Defendant. | Civil Action No.<br>3:21-cv-13855-ZNQ-DEA |

**DEFENDANT HEARTLAND PAYMENT SYSTEMS, LLC'S**
**SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

Dated: October 30, 2024

David L. Balser*
Brandon R. Keel*
Ryan T. Kearney (NJB 90408-2012)
Billie Pritchard*
Carley Hawkins*
**KING & SPALDING LLP**
1180 Peachtree St. NE
Atlanta, GA 30309
Tel:   (404) 572-4600
Fax:   (404) 572-5100
dbalser@kslaw.com
bkeel@kslaw.com
rkearney@kslaw.com
bpritchard@kslaw.com
chawkins@kslaw.com

*Attorneys for Defendant*

*admitted pro hac vice*

## **INTRODUCTION**

The Court allowed this case to survive dismissal on the narrow basis that it was obligated, at the pleading stage, to accept Plaintiffs' allegation that an ambiguity existed concerning the ability of Defendant Heartland Payment Systems, LLC ("Heartland") to amend the parties' agreement. *See* ECF 47 at 13. The Third Circuit reversed, finding that Heartland's motion to dismiss or, in the alternative, to compel arbitration presented a "pure legal question" for the Court to resolve based on the language of the parties' agreement and the Court's construction thereof. *Black Ship, LLC v. Heartland Payment Sys., LLC*, 2024 WL 4210519, at *3 (3d Cir. Sept. 17, 2024). "[A]ny assertion by the [Plaintiffs] in their operative complaint that th[e relevant] clauses were ambiguous cannot be credited." *Id.*

The case thus returns to this Court to apply the principles of contract interpretation that it already found "favor[ed]" Heartland's motion but stopped short of applying on the basis that the Court could not "engage in contract interpretation at this stage." ECF 47 at 14 n.3. With the Third Circuit having now clarified that the Court must apply those rules of construction, the question on remand is this: Applying basic principles of contract interpretation, did Heartland properly modify the contract to change the forum selection clause to Georgia and add an arbitration requirement? The answer is yes. Accordingly, this Court should dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction or compel arbitration.

## BACKGROUND

Plaintiffs are two California businesses that used Heartland's payment-processing services to facilitate card payments from their customers. Each Plaintiff entered into an identical Merchant Processing Agreement with Heartland—with Plaintiff 33 Taps signing on September 26, 2016, and Plaintiff Hinoki & The Bird signing on January 5, 2017. ECF 47 at 4. The Court has called this the "First Agreement" and held that three of its provisions were relevant here. *Id.* at 2.

*First*, the First Agreement contained a provision (the "Changes Provision") authorizing Heartland to modify the agreement by providing notice of the changes in writing or on its website. *Id.* at 3. The provision states that Heartland "may change the terms of or add new terms to this Agreement at any time" and that those changes would "be effective when notice thereof is given by [Heartland] either through written communication or on its Merchant website located at [a specified link]." *Id.*

*Second*, the First Agreement contained a provision (the "Notice Provision") creating a presumption of delivery for written notices sent by first-class mail. *Id.* at 3-4. The provision states that "[a]ll notices and other communication required or permitted under th[e First] Agreement shall be deemed delivered when mailed first-class mail, postage prepaid, addressed to the Merchant" at the proper address. *Id.*

*Third*, the First Agreement contained a forum-selection clause requiring that any lawsuit be brought in New Jersey state or federal court. *Id.* at 2-3.

Heartland modified the First Agreement in May 2017 pursuant to the Changes Provision, creating what the Court has called the "Second Agreement." *Id.* at 4. The Second Agreement includes both an arbitration clause requiring that any dispute be resolved through binding arbitration, and a forum-selection clause requiring that any lawsuit be brought in state or federal court in Georgia. ECF 26-9 ¶¶ 17.1, 17.2.

Consistent with the Changes Provision of the First Agreement, Heartland posted these updated terms on its merchant-facing website in April 2017. ECF 47 at 4. Heartland also notified Plaintiffs of the updated terms through their billing statements, which stated prominently that there were "**Important Revisions to the Merchant Processing Agreement**," including changes "**that relate to arbitration and class actions**," and directed Plaintiffs to review the changes by accessing Heartland's website. *Id.* at 4-5 (bold type in original).

As the Third Circuit acknowledged, these facts are not in dispute. *See Black Ship*, 2024 WL 4210519, at *3. Plaintiffs admit that "[i]n or about May 2017, Heartland through monthly billing statements and Heartland's website purported to revise the Agreement to: (1) include a mandatory arbitration and class action waiver provisions [sic]; (2) change the forum selection clause to Georgia; and (3) change the governing law to Georgia law." ECF 16, 61 ¶ 159. The Second Agreement also provides that it would "become effective upon acceptance of the first Merchant deposit by [Heartland]" after June 1, 2017. ECF 47 at 5. Plaintiffs continued to use

Heartland's services at least through 2021, so there is no question that the Second Agreement became effective as applied to Plaintiffs under its plain terms. *Id.*

Ignoring the operative agreements, Plaintiffs filed this putative class action in the District of New Jersey, premising their claims entirely on the notion that Heartland's attempt to modify the First Agreement in 2017 pursuant to the Changes Provision was invalid, and that the First Agreement remains the parties' operative contract. ECF 16, 61. Heartland moved to dismiss or compel arbitration based, in part, on the Second Agreement's arbitration and forum-selection clauses. ECF 25.

The Court denied Heartland's motion, concluding that it could not "engage in contract interpretation" to determine whether the First or Second Agreement controls because Plaintiffs had "implicitly allege[d] an ambiguity exists in the First Agreement" with respect to whether Heartland could modify the agreement by posting the changes on its website in accordance with the Changes Provision, or whether it also had to send Plaintiffs written notice of the changes by first-class mail. ECF 47 at 13. The Third Circuit reversed on this point, making clear that this Court "was not under an obligation to credit the restaurants' interpretation of the" Changes Provision and Notice Provision. *Black Ship*, 2024 WL 4210519, at *3. Instead, "it should have performed a legal interpretation." *Id.*

This Court also made multiple findings, left undisturbed by the Third Circuit, that bear on this remand. *First*, it held that Heartland complied with the Changes

Provision when it posted the Second Agreement to its website. ECF 47 at 4. The Third Circuit agreed. *Black Ship*, 2024 WL 4210519, at *3. *Second*, this Court found that "Plaintiffs mutually assented to [Heartland]'s future modifications to the forum-selection clause when they agreed to the Changes Provision" in the First Agreement. ECF 47 at 12. *Third*, this Court found that "[t]he only basis for [its] exercise of personal jurisdiction over" Heartland was "the First Agreement's [New Jersey] forum-selection clause." *Id.* at 17. In light of those undisturbed holdings, the Court's inquiry on remand is a narrow one: It must apply the principles of contract interpretation to determine which agreement controls.

## **ARGUMENT**

As this Court and the Third Circuit recognized, Heartland adopted the arbitration clause and the Georgia forum-selection clause "in accordance with the Changes Provision" of the First Agreement. ECF 47 at 4; *Black Ship*, 2024 WL 4210519, at *3. That provision authorized Heartland to "change the terms of or add new terms to this Agreement at any time" by giving notice of the new or modified terms "*either* through written communication *or* on its Merchant website." ECF 47 at 3 (emphasis added). It is undisputed that Heartland provided notice of the new terms on its website and further alerted Plaintiffs to the changes in billing statements.

This Court correctly held that Plaintiffs "willfully signed and mutually assented to" the Changes Provision and that the provision was valid and enforceable.

5

*Id.* at 11; *see also id.* at 12 ("[T]he mutually-agreed-to Changes Provision authorized [Heartland] to modify the First Agreement if notice was properly given."). That finding is law of the case. *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 233 (3d Cir. 2002) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citation omitted)).

The only question now is whether the First Agreement was ambiguous as to whether providing notice through the website was sufficient. There was no ambiguity. The Changes Provision expressly stated that Heartland could give notice "*either* through written communication *or* on its Merchant website." ECF 26-8 ¶ 15.15 (emphasis added). Heartland did both: It posted the changes on its website, and it also provided written notice through Plaintiffs' billing statements. As "[t]he use of 'or' is almost always disjunctive," the provision "identifie[d] two circumstances" in which Heartland's notice would be sufficient. *Cipla Ltd. v. Amgen Inc.*, 778 F. App'x 135, 140 (3d Cir. 2019) (quotation marks omitted). "Where the terms of a contract are clear and unambiguous[,] …[courts] must enforce those terms as written." *Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020) (quotation omitted).

Trying to avoid this outcome, Plaintiffs have argued that the Notice Provision rendered the agreement ambiguous. ECF 47 at 13. That provision states that "[a]ll notices and other communication required or permitted under th[e First] Agreement

6

shall be deemed delivered when mailed first-class mail." ECF 26-8 ¶ 14.1. Plaintiffs rely on the Notice Provision to argue that Heartland was required to send notice of the Second Agreement through first-class mail. For several reasons, they are wrong.

*First*, as a matter of plain text, there is no tension between the Changes Provision and the Notice Provision because the Notice Provision does not state that notice may be given *only* by first-class mail. Rather, it simply says that written notice "shall be deemed delivered" when mailed first-class. That language creates "a presumption" that first-class mailing is *sufficient* to provide notice, but it does not "mandate" that notice be given in that manner or preclude its being given by other means, as numerous courts have recognized when addressing similar provisions. *Leisure Sys., Inc. v. Roundup, LLC*, 2012 WL 5378302, at *7 (S.D. Ohio Oct. 31, 2012).[1] In other words, had Heartland chosen to provide notice of the amendment solely by written notice via first-class mail, the Notice Provision would have provided that such notice was "deemed delivered" when mailed. But Heartland chose, instead, to provide notice of the changes via its merchant-facing website pursuant to the Changes Provision, and the Notice Provision was thus not applicable. There is therefore no conflict between the Notice Provision and the Changes Provision's allowing notice of contractual modifications through the website.

---

[1] *See also, e.g.*, *Holman v. Brady*, 2016 WL 4921457, at *8 (Wash. Ct. App. Sept. 13, 2016) (similar); *Haskins v. Deutsche Bank Nat'l Tr. Co.*, 19 N.E.3d 455, 462 (Mass. App. Ct. 2014) (similar).

***Second***, even if the Notice Provision could be read as requiring that notice be sent by first-class mail in some circumstances, that requirement would apply only to the giving of *written* notice and not to notice that the contract expressly stated could be given by other means. Numerous provisions of the First Agreement referred to "written" notice. *See, e.g.*, ECF 26-8 ¶¶ 4.24, 4.35, 5.10, 6.2, 11.1. The Changes Provision, by contrast, stated that notice could be given "either through written communication or on [Heartland's] website." *Id.* ¶ 15.15. To read the contract as Plaintiffs do—*i.e.*, requiring all notices under the Changes Provision to be sent by first-class mail—would render the express authorization of website notice superfluous and ineffectual, contravening the principle that "[a] contract must be construed as a whole … and every word of it will, if possible, be given effect." *Wash. Constr. Co. v. Spinella*, 84 A.2d 617, 619 (N.J. 1951) (quotation marks omitted); *see Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 152-53 (3d Cir. 1992) (applying New Jersey law to reject plaintiff's reading of a contract because it "eviscerate[d]" certain contractual terms, effectively "read[ing them] out of" the contract). New Jersey law "do[es] not sanction such an emasculation of the clear language of a contract in an attempt to discover ambiguity." *Pennbarr*, 976 F.2d at 153.

***Third***, even if the Changes Provision and Notice Provision could be viewed as inconsistent, the Changes Provision would control. It is a "well-recognized rule of construction that when two provisions dealing with the same subject matter are

8

present, the more specific provision controls over the more general." *Homesite Ins.*

*Co. v. Hindman*, 992 A.2d 804, 808 (N.J. Super. Ct. App. Div. 2010). Here, the

Changes Provision is the more specific of the two provisions. The Notice Provision

concerns all written notices by either party that are "required or permitted under this

Agreement," ECF 26-8 ¶ 14.1, whereas the Changes Provision deals specifically

with how Heartland must provide notice of "changes or new terms," *id.* ¶ 15.15. Any

tension between the two provisions must therefore be resolved in favor of the more

specific Changes Provision and its express authorization of website notice.

Based on the contract's plain text, Heartland complied with the First

Agreement by providing notice of the contract modifications through its website.

That should be the end of the matter. As this Court held, "Plaintiffs willfully signed

and mutually assented to the First Agreement"—meaning they also "assented to

Defendant's future modifications" made in accordance with the Changes

Provision—and "Plaintiffs failed to show that the Changes Provision is

unenforceable under New Jersey law." ECF 47 at 11-12. Those holdings are law of

the case. The Second Agreement therefore controls.[2]

---

[2] Although Plaintiffs argued on appeal that the Changes Provision is invalid or unenforceable, the Third Circuit did not credit those arguments and left this Court's contrary holdings undisturbed. Through multiple rounds of briefing, Plaintiffs have failed to identify any basis under New Jersey law for refusing to enforce the Changes Provision. On the contrary, New Jersey law embraces "the doctrine of freedom of contract" and enforces contractual terms, like the Changes Provision, to which parties have voluntarily agreed. *Marcinczyk v. State of N.J. Police Training Comm'n*,

Because the Second Agreement controls, this case must be dismissed for lack of personal jurisdiction. As the Court acknowledged, "[t]he only basis for [its] exercise of personal jurisdiction over" Heartland was "the First Agreement's forum-selection clause." ECF 47 at 17. The Court's personal jurisdiction was thus "completely contingent upon the Court crediting Plaintiffs' factual assertion … that the Notice Provision required first-class mail notice and superseded the Changes Provision's requirements." *Id.* at 14. Because Plaintiffs' assertion was incorrect as a matter of law, this case should be dismissed for lack of personal jurisdiction.

If the Court were to nonetheless exercise personal jurisdiction, then it would have to compel arbitration. It is undisputed that the Second Agreement contains a binding arbitration clause and that Plaintiffs' claims fall within the scope of that clause. *See* ECF 34 at 22-26. Accordingly, if Heartland were subject to personal jurisdiction, then the Court would have "no discretion" and would be required to compel arbitration. *See Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004).

## **CONCLUSION**

Heartland respectfully requests that the Court dismiss the Amended Complaint in its entirety or, in the alternative, compel arbitration.

---

5 A.3d 785, 788-89 (N.J. 2010); *see, e.g.*, *Rudbart v. N.J. Dist. Water Supply Comm'n*, 605 A.2d 681, 685, 688-89 (N.J. 1992) (per curiam) (holding that "principles of freedom of contract" required enforcement of a "fully disclosed" contractual term allowing notice by newspaper publication).

10

Dated: October 30, 2024

Respectfully submitted,

*/s/ Ryan T. Kearney*

David L. Balser\*
Brandon R. Keel\*
Ryan T. Kearney (NJB 90408-2012)
Billie Pritchard\*
Carley Hawkins\*
**KING & SPALDING LLP**
1180 Peachtree St. NE, Suite 1600
Atlanta, Georgia 30309
Telephone:  (404) 572-4600
Facsimile:   (404) 572-5100
dbalser@kslaw.com
bkeel@kslaw.com
rkearney@kslaw.com
bpritchard@kslaw.com
chawkins@kslaw.com

*Attorneys for Defendant*

\* admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 30, 2024, I caused a true and correct copy of the foregoing to be filed via the Court's ECF system, which will send notice to all counsel of record.

<u>/s/ Ryan T. Kearney     </u>
Ryan T. Kearney (NJB 90408-2012)
